UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOANNA PEDROZA,

                          Plaintiff,                Case No.: 1:19-cv-08639

      -against-

RALPH LAUREN CORPORATION,

                          Defendant.

-------------------------------------------------------------------x

## DEFENDANT RALPH LAUREN CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS

Matthew A. Steinberg
*matthew.steinberg@akerman.com*
Ira S. Sacks
*ira.sacks@akerman.com*
Raymond J. Berti
*raymond.berti@akerman.com*
AKERMAN LLP
666 Fifth Avenue, 21st Floor
New York, New York 10103
Tel. (212) 880-3800
Fax (212) 905-6480

ATTORNEYS FOR DEFENDANT
RALPH LAUREN CORPORATION

Dated: February 11, 2020
      New York, New York

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

    I.    Background On RLC ......................................................................................... 2

    II.    Background On RLC's Polo Factory Stores. .................................................. 3

    III.    Background On RLC's New Jersey-Based Polo Factory Stores Division. ...................... 3

    IV.    Background On RLC's New Jersey-Based Human Resources Team Supporting The PFS Division. .................................................................. 3

    V.    Background On Plaintiff's Employment With RLC. ...................................... 3

    VI.    Plaintiff's Employment With RLC In New Jersey. ....................................... 4

    VII.    From In Or Around April 2018 Until Her Termination In February 2019, Plaintiff Regularly Worked In RLC's New Jersey Offices. ........................... 4

    VIII.    Plaintiff's Job Duties Were Not Focused On New York State Or City. ......... 5

    IX.    Plaintiff's Direct Supervisor And Direct Reports Also Regularly Worked In RLC's New Jersey Offices. ....................................................................... 5

    X.    Plaintiff's Termination In New Jersey. ......................................................... 6

    XI.    Plaintiff's Allegations. .................................................................................. 6

LEGAL ARGUMENT ................................................................................................... 7

    I.    THE STANDARD ON A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1). ......................................................................................................... 7

    II.    PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS FAIL AS A MATTER OF LAW. ......................................................................................... 7

        A.    Plaintiff's NYSHRL And NYCHRL Claims Should Be Dismissed Because She Cannot Show That She Felt The Impact Of Her Termination In New York. .......... 7

        B.    RLC's Response To Plaintiff's Anticipated Arguments In Opposition To This Motion. ...................................................................... 10

CONCLUSION ............................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amaya v. Ballyshear LLC*,
    340 F. Supp. 3d 215 (E.D.N.Y. 2018) ........................................................... passim

*Anderson v. HotelsAB, LLC*,
    No. 15-cv-712, 2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015)..........................................12, 15

*Benham v. eCommission Sols., LLC*,
    118 A.D.3d 605 (1st Dep't 2014) ............................................................9

*E.E.O.C. v. Bloomberg L.P.*,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013)...............................................8, 9, 10, 14

*Chen-Oster v. Goldman, Sachs & Co.*,
    251 F. Supp. 3d 579 (S.D.N.Y. 2017)...............................................12, 13

*Chin v. CH2M Hill Companies, Ltd.*,
    12-cv-4010, 2012 WL 4473293 (S.D.N.Y. Sept. 28, 2012) .........................................10, 11, 13

*Duffy v. Drake Beam Morin*,
    No. 96 CIV. 5606 (MBM), 1998 WL 252063 (S.D.N.Y. May 19, 1998) ..............................14

*Fried v. LVI Servs., Inc.*,
    500 F. App'x 39 (2d Cir. 2012) ...............................................2, 9, 10, 14

*Frisone v. Pepsico Inc.*,
    369 F.Supp.2d 464 (S.D.N.Y. 2005)...............................................7

*Hardwick v. Auriemma*,
    116 A.D.3d 465 (1st Dep't 2014) ...............................................8, 12, 15

*Hoffman v. Parade Publ'ns*,
    15 N.Y.3d 285 (2010) ........................................................... passim

*Lambui v. Collins*,
    No. 14-CV-6457 JS AYS, 2015 WL 5821589 (E.D.N.Y. Sept. 30, 2015)...............7, 8, 12, 15

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)...............................................7

*Regan v. Benchmark Co. LLC*,
    11-cv-04511, 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012)...............................................12, 13

*Vangas v. Montefiore Med. Ctr.*,
    823 F.3d 174 (2d Cir. 2016)....................................................................................................14

**Statutes**

Family and Medical Leave Act of 1993 ...................................................................................1, 6

New York City Human Rights Law....................................................................................... passim

New York State Human Rights Law ..................................................................................... passim

**Rules**

Fed. R. Civ. P. 12..................................................................................................................... passim

This memorandum of law is respectfully submitted by Ralph Lauren Corporation ("RLC") in support of its partial motion to dismiss Plaintiff Joanna Pedroza's claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## **INTRODUCTION**

Plaintiff is a New Jersey resident who was employed by RLC from October 2015 and to February 2019. For the first two and a half years of her employment, Plaintiff was based in RLC's New York City offices. In or around April 2018, however, Plaintiff was transferred to RLC's Lyndhurst, New Jersey offices. Plaintiff continued to work in RLC's Lyndhurst, New Jersey offices until February 2019, when she was informed in New Jersey that her position had been eliminated in connection with an internal company reorganization.

Following her separation, she filed the instant Complaint, in which she challenges her termination as discriminatory and/or retaliatory under the Family and Medical Leave Act of 1993 ("FMLA"), NYSHRL, and NYCHRL – but not, curiously, under New Jersey law. Indeed, it is undisputed that Plaintiff does not challenge any employment action or decision that occurred during the period in which she was based in RLC's New York City offices. To the contrary, Plaintiff's claims relate entirely to her February 2019 termination from RLC's Lyndhurst, New Jersey offices – where she had been based and regularly worked for the preceding 10 months.

Critically, Plaintiff's NYSHRL and NYCHRL claims are foreclosed by the New York Court of Appeals' seminal decision in *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285 (2010), which held that "nonresidents of the city and state must plead and prove that the alleged discriminatory conduct had an impact within those respective boundaries" to establish subject-matter jurisdiction over such claims. *Id.* at 292. In rendering its decision, the Court of Appeals explained that it had

1

adopted this "impact test" because it was "relatively simple for courts to apply and litigants to follow" and therefore "lead[] to predictable results." *Id.*

Accordingly, over the past ten years, New York state and federal courts have repeatedly applied *Hoffman* to dismiss, at the Fed. R. Civ. P. 12 pleadings stage, NYSHRL and NYCHRL claims asserted by non-residents who failed to show by a preponderance of the evidence that they did not <u>feel</u> the impact of the allegedly discriminatory conduct in New York – even though these non-residents may have occasionally worked with New York-based colleagues and/or traveled into New York for work. For instance, the Second Circuit has held that a plaintiff who lived and worked in his employer's Connecticut offices could not satisfy *Hoffman*'s "impact test" even where he "frequently communicated" with his employer's New York headquarters and attended work-related meetings in New York City. *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 42 (2d Cir. 2012). Indeed, holding otherwise would effectively expand the scope of the NYCHRL to cover all decisions of New York City-based employers, regardless of the location of their employees.

<u>Accordingly, to survive dismissal of her NYSHRL and NYCHRL claims, it is Plaintiff's burden to establish by a preponderance of the evidence that she felt the impact of her termination in New York City</u>. This, she cannot do.

## FACTUAL BACKGROUND

## I.      Background On RLC.

RLC is an American company and global leader in the design, marketing, and distribution of premium lifestyle products such as apparel, accessories, home goods, and fragrances. (Tejada Decl. at ¶ 2.)[1]

---

[1]      Citations to the Declaration of Deirdre Tejada, dated February 10, 2020, are abbreviated herein as "Tejada Decl. at ¶ [*paragraph number*]."

## II.     Background On RLC's Polo Factory Stores.

RLC maintains and operates a number of retail locations across the world, including but not limited to approximately one-hundred and eighty five (185) Polo Factory Stores ("Factory Stores") across the United States and Canada. (*Id.* at ¶¶ 3, 9.) These Factory Stores are located in suburban and exurban outlet malls that offer customers quality fashion and apparel products at discounted prices that are typically lower than prices in department stores and/or other RLC retail locations (which are generally located in major cosmopolitan cities). (*Id.* at ¶ 3.)

Approximately ten (10) of these Factory Stores are located in New York State. (*Id.* at ¶ 10.) However, RLC does not maintain or operate any Factory Stores in New York City. (*Id.* at ¶ 11.)

## III.    Background On RLC's New Jersey-Based Polo Factory Stores Division.

Factory Stores are managed by RLC's Polo Factory Stores division (the "PFS Division"). (*Id.* at ¶ 4.) The entire corporate executive team responsible for RLC's Factory Stores has been based in RLC's New Jersey offices at all relevant times. (*Id.* at ¶ 16.)

## IV.    Background On RLC's New Jersey-Based Human Resources Team Supporting The PFS Division.

RLC's human resources department is referred to as the "People and Development" department ("P & D Department"). (*Id.* at ¶ 5.)

Importantly, the PFS Division has its own dedicated human resources team within the P & D Department. (*Id.* at ¶ 6.) Critically, every member of this team – including Plaintiff – was based in and/or regularly worked in New Jersey at all relevant times. (*Id.* at ¶¶ 8, 18, 20, 28.)

## V.     Background On Plaintiff's Employment With RLC.

Plaintiff is a New Jersey resident who was employed by RLC as a human resources professional between October 2015 and February 2019. (Compl. at ¶¶ 10 16, 30; Tejada Decl. at

¶¶ 21, 50.)[2] Between in or around October 2015 and in or around April 2018, Plaintiff was based in RLC's New York City offices and worked on a team in the P & D Department that was unrelated to the PFS Division. (Tejada Decl. at ¶¶ 21-23.)

## VI.   Plaintiff's Employment With RLC In New Jersey.

In or around April 2018, Plaintiff accepted the position of "Senior Director of People and Development, Polo Factory Stores for North America (US & Canada)." (Compl. at ¶ 21; Tejada Decl. at ¶ 22.) In this role, Plaintiff's responsibilities included, but were not limited to, performing human resources support functions for the approximately ten thousand (10,000) employees in the one hundred and eighty five (185) Factory Stores located across North America. (Tejada Decl. at ¶ 27.) As a result, Plaintiff was transferred to RLC's Lyndhurst, New Jersey offices, to join the rest of the team in the P & D Department responsible for supporting the PFS Division. (*Id.* at ¶¶ 20, 22-23.) Thereafter, Plaintiff regularly worked in New Jersey from the time of her transfer in or around April 2018 through her termination in February 2019. (*Id.* at ¶¶ 8, 18, 20, 28.)

## VII.   From In Or Around April 2018 Until Her Termination In February 2019, Plaintiff Regularly Worked In RLC's New Jersey Offices.

Although Plaintiff's job function was to support RLC's Factory Stores throughout the United States and Canada, she regularly performed her job duties from RLC's Lyndhurst, New Jersey offices. (*Id.* at ¶ 29.)

Specifically, Plaintiff was generally responsible for addressing questions from Factory Store employees across North America, including those relating to payroll and/or benefits; supporting new Factory Store openings; and generally managing Factory Store employee relations. (*Id.* at ¶ 30.) Plaintiff's job duties also required her to regularly communicate and/or work with the PFS Division's twenty-two (22) District Managers and four (4) Regional Directors who are based

---

[2]      Citations to Plaintiff's Complaint are abbreviated herein as "Compl. at ¶ [*paragraph number*]."

throughout North America. (*Id.* at ¶ 31.) Plaintiff generally performed her job duties by telephone, e-mail, or RLC's internal messaging platform. (*Id.* at ¶¶ 32-34.)

Following her transfer to RLC's Lyndhurst, New Jersey offices in or around April 2018, Plaintiff rarely returned to RLC's New York City offices, and did not often travel outside New Jersey for work. (*Id.* at ¶¶ 29, 42-43, 47.) However, she did occasionally, although infrequently, travel to locations across the United States such as Orlando, Florida and Las Vegas, Nevada for off-site RLC meetings and/or trainings. (*Id.* at ¶ 44.)

**VIII.   Plaintiff's Job Duties Were Not Focused On New York State Or City.**

Because RLC does not maintain any Factory Stores in New York City, Plaintiff did not have any New York City-focused responsibilities. (*Id.* at ¶ 35.) Similarly, Plaintiff's responsibilities were not in any way focused specifically on New York State and/or the approximately ten (10) Factory Stores located there, which represent less than six (6) percent of the one hundred and eighty five (185) Factory Stores located across the United States and Canada for which she was responsible. (*Id.* at ¶ 36.) Indeed, the support function that Plaintiff served for RLC's New York State-based Factory Stores was no different from the support function she served for Factory Stores located throughout the rest of North America. (*Id.* at ¶ 37.) Plaintiff's general support for RLC's New York State Factory Stores was therefore indistinguishable from her support for RLC's various other Factory Stores throughout North America. (*Id.* at ¶ 39.)

**IX.   Plaintiff's Direct Supervisor And Direct Reports Also Regularly Worked In RLC's New Jersey Offices.**

Beginning in or around October 2018, and continuing through Plaintiff's termination in February 2019, Plaintiff's direct supervisor was Vice President of People and Development, Polo Factory Stores, Ralph Lauren Stores & Retail Learning and Development for North America (U.S. & Canada) Deirdre Tejada ("Ms. Tejada") (incorrectly named in the Complaint as "Diredre

Tejeda"). (*Id.* at ¶¶ 1, 24-26.) Throughout this time, Ms. Tejada also had an office and regularly worked in RLC's Lyndhurst, New Jersey offices. (*Id.* at ¶ 18.)

In her role as Senior Director of People and Development, Polo Factory Stores for North America (US & Canada), Plaintiff was also responsible for supervising three of her own direct reports, all of whom were also based in RLC's Lyndhurst, New Jersey offices. (*Id.* at ¶ 28.)

## X.  Plaintiff's Termination In New Jersey.

Before January 30, 2019, the decision was made to terminate Plaintiff's employment. (*Id.* at ¶ 48.) On February 13, 2019, Ms. Tejada met with Plaintiff in RLC's Lyndhurst, New Jersey offices and informed Plaintiff that her employment had been terminated because her position had been eliminated. (*Id.* at ¶ 49; Compl. at ¶ 3.) Plaintiff's last day of employment with RLC was on February 13, 2019. (Tejada Decl. at ¶ 50.)

## XI.  Plaintiff's Allegations.

In this litigation, Plaintiff challenges her February 13, 2019 termination under the NYSHRL, NYCHRL, and FMLA. (Compl. at ¶¶ 1, 36-67.) Specifically, she alleges that RLC terminated her employment because, beginning on January 30, 2019, she engaged in protected activity by raising the potential need for a leave of absence with several RLC employees, including but not limited to Ms. Tejada. (*Id.* at ¶¶ 24-28.)

Although this issue is not the subject of the instant Motion, RLC is prepared to show in this litigation that its decision to terminate Plaintiff's employment was based on legitimate, non-discriminatory, non-retaliatory reasons – and that this decision was indisputably made *before* her alleged protected activity. (Tejada Decl. at ¶ 48.)

# LEGAL ARGUMENT

## I. THE STANDARD ON A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Under Fed R. Civ. P. 12(b)(1), '[even] a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient.'" *Frisone v. Pepsico Inc.*, 369 F.Supp.2d 464, 469 (S.D.N.Y. 2005) (quoting *Peterson v. Cont'l Airlines Inc.*, 970 F.Supp. 246, 249 (S.D.N.Y. 1997)).

"In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other material beyond the pleading to resolve jurisdictional questions." *Lambui v. Collins*, No. 14-CV-6457 JS AYS, 2015 WL 5821589, at *3 (E.D.N.Y. Sept. 30, 2015). "The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiff because subject matter jurisdiction must be shown affirmatively." *Id.* Ultimately, "[t]he plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Id.*; *see also Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 219 (E.D.N.Y. 2018) ("[T]he party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'") (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

## II. PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS FAIL AS A MATTER OF LAW.

### A. Plaintiff's NYSHRL And NYCHRL Claims Should Be Dismissed Because She Cannot Show That She Felt The Impact Of Her Termination In New York.

In *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 292 (2010), the New York Court of Appeals examined the text and purpose of the NYSHRL and NYCHRL and concluded that the protections

of these laws do not extend to "nonresidents…[who are] unable to demonstrate that the impact of the discriminatory act was <u>felt</u> inside New York State or City." *Id.* (emphasis added). Rather, these laws are designed to protect only those who "inhabit" or "work" in these jurisdictions. *Id.* at 289. Accordingly, the Court of Appeals held that, to survive dismissal for lack of subject-matter jurisdiction, "nonresidents of the city and state must plead and prove that the alleged discriminatory conduct had an impact within those respective boundaries." *Id.*

Significantly, the *Hoffman* court explicitly rejected an alternative interpretation of these statutes which would have permitted nonresidents to bring suit if they could show that the challenged employment decision was made in New York State or City, reasoning that such a standard "would lead to inconsistent and arbitrary results, and expand[] NYCHRL protections to nonresidents who have, at most, tangential contacts with the city." *Id.* at 291. The benefit of the "impact test," the *Hoffman* court observed, is that it was "relatively simple for courts to apply and litigants to follow" and would "lead[] to predictable results." *Id.*

Consequently, in the ten years since *Hoffman* was decided, courts have repeatedly dismissed NYSHRL and/or NYCHRL claims <u>at the pleadings stage</u> for lack of subject-matter jurisdiction where "the impact of the alleged discrimination was felt" outside New York State or City. *See, e.g.*, *Amaya*, 340 F. Supp. 3d at 215; *Lambui v. Collins*, No. 14-CV-6457 JS AYS, 2015 WL 5821589, at *3 (E.D.N.Y. Sept. 30, 2015); *Hardwick v. Auriemma*, 116 A.D.3d 465, 466-468 (1st Dep't 2014); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013). The consistent theme running throughout *Hoffman* and its progeny is that what matters is where the alleged discriminatory act is <u>felt</u> by the plaintiff, and <u>not where it purportedly originated</u>. *See Hardwick*, 116 A.D.3d at 466-468 ("[I]t is the place where the impact of the discriminatory conduct is felt that controls whether the Human Rights Laws apply, not where the decision is made.");

*Lambui*, 2015 WL 5821589, at *4 (same). Put simply, "[w]hether New York courts have subject matter jurisdiction over a nonresident plaintiff's claims under the HRLs turns primarily on her <u>physical location at the time of the alleged discriminatory acts</u>." *Benham v. eCommission Sols., LLC*, 118 A.D.3d 605, 606 (1st Dep't 2014).

Critically, courts have consistently refused to expand the scope of the "impact test" to cover non-residents who do not regularly work in New York State or City. *See, e.g.*, *Amaya*, 340 F. Supp. 3d at 222 ("To accept the Plaintiff's argument that mere interactions with a non-resident plaintiff are sufficient would expand the scope of the NYCHRL to cover all decisions of New York City-based employers regardless of the location of their employees."). For instance, the Second Circuit has found that a plaintiff who lived and regularly worked in Connecticut could not satisfy *Hoffman*'s "impact test" even though "he frequently communicated with LVI's New York headquarters and attended meetings in New York City regarding local projects." *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 42 (2d Cir. 2012); *see also Bloomberg L.P.*, 967 F. Supp. 2d at 865 ("[B]oth the New York Court of Appeals and the Court of Appeals for the Second Circuit have held that the impact requirement is not satisfied simply by pointing to frequent communication with a managing offices in New York City and meetings there regarding local projects.").

Here, the evidence plainly shows that Plaintiff was at all relevant times a New Jersey resident and employee, and that she was terminated while in New Jersey. (Compl. at ¶ 10; Tejada Decl. at ¶ 40.) Accordingly, Plaintiff does not plausibly allege – and cannot meet her burden of showing by a preponderance of the evidence – that she felt the impact of the allegedly discriminatory/retaliatory act (i.e., her February 2019 termination) in New York State or City. To the contrary, the evidence conclusively shows that Plaintiff was based in and regularly worked from RLC's Lyndhurst, New Jersey offices from in or around April 2018 through her termination

nearly a year later. (Tejada Decl. at ¶¶ 29-34.) And, even though Plaintiff may have occasionally

fielded inquiries and/or worked with Factory Stores in New York State, *see id.* at ¶¶ 37-39; or

infrequently traveled to trainings and/or meetings at RLC's New York City offices, *see id.* at ¶¶

43, 45-46; such limited connections to New York are insufficient to satisfy *Hoffman*'s "impact

test." *See Fried*, 500 F. App'x at 42; *Bloomberg L.P.*, 967 F. Supp. 2d at 865.

Accordingly, Plaintiff cannot satisfy her burden of establishing that this Court has subject-

matter jurisdiction over her NYSHRL and NYCHRL claims, and they should be dismissed.

**B.    RLC's Response To Plaintiff's Anticipated Arguments In Opposition To This Motion.**

Based on Plaintiff's December 4, 2019 response to RLC's November 18, 2019 letter-

motion for a pre-motion conference, we expect Plaintiff to assert two primary arguments in

opposition to the instant Motion. *See* Dkt. Entry No. 15. First, we anticipate that Plaintiff will ask

the Court to apply an erroneous standard on a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(1). Second, we expect that Plaintiff will argue that she can satisfy *Hoffman*'s "impact test"

because, even after she transferred to RLC's Lyndhurst, New Jersey offices, some aspects of her

employment were still tied to New York. As shown below, neither argument will be persuasive.

1.    Plaintiff misstates the standard on a motion to dismiss.

In her December 4, 2019 correspondence to the Court, Plaintiff cites *Chin v. CH2M Hill*

*Companies, Ltd.*, 12-cv-4010, 2012 WL 4473293, at *3 (S.D.N.Y. Sept. 28, 2012) in support of

the proposition that, "to succeed on a motion to dismiss [NYSHRL/NYCHRL claims], a defendant

must show 'that there is no possibility that there was an impact in New York.'" *See* Dkt. Entry No.

15, at 2. However, this argument is based on a misreading of the *Chin* decision, which did not

involve a motion to dismiss.

Instead, and unlike here, the *Chin* court was deciding a plaintiff's motion to remand an employment discrimination case back to state court on the grounds that one of the defendants was fraudulently joined as a defendant. *Id.* at *1. The *Chin* court observed that a plaintiff's burden to show fraudulent joinder was a "heavy" one, citing a Second Circuit decision holding that the moving party must show "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the nondiverse defendant in state court." *Id.* (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Accordingly, the court explained that, for a plaintiff to succeed on a motion to remand for fraudulent joinder, she had to show that there was no possibility that she could state her NYCHRL claims against the defendants in state court.

Critically, the *Chin* court observed that there was "meaningful distance" between this "no possibility" standard and the standard on a motion to dismiss, describing the latter as "significantly more forgiving (for defendants) than improper joinder." *Id.* at *3-4. Specifically, on a motion to dismiss, "*Hoffman* requires that Plaintiff 'plead and prove that the alleged discriminatory conduct had an impact in New York[,]" whereas, the standard on a motion to remand for fraudulent joinder, "in contrast, requires only that Plaintiff be able to 'state a cause of action against the non-diverse defendant in state court.'" *Id.* at *3 (internal citations omitted). In applying this uniquely heightened standard, the court concluded that it was at least *possible* that the plaintiff could state her NYCHRL claims against the defendants, and therefore remanded the case. *Id.* at *4.

Thus, there is no plausible reading of *Chin* that supports Plaintiff's contention that it is RLC's burden to establish that there is no possibility that she felt the impact of her termination in New York. To the contrary, Plaintiff appears to be conflating the "heavy" burden of establishing fraudulent joinder with the "significantly more forgiving" standard on a motion to dismiss. *Id.* Indeed, as shown, *supra*, to survive dismissal, it is actually Plaintiff's burden to show, by a

preponderance of the evidence, that she felt the impact of her termination in New York – which she cannot do. *See, e.g.*, *Hardwick*, 116 A.D.3d at 465-468; *Lambui*, 2015 WL 5821589, at *4; *Anderson*, 2015 WL 5008771, at *2.

### 2.  Plaintiff mischaracterizes the "impact test."

In her December 4, 2019 letter, Plaintiff argues that her NYSHRL and NYCHRL claims should not be dismissed because, even after her transfer to New Jersey, her employment allegedly continued to be linked in certain respects to New York. In support of this argument, she cites to three federal court decisions – *Anderson v. HotelsAB, LLC*, No. 15-cv-712, 2015 WL 5008771, at *4 (S.D.N.Y. Aug. 24, 2015); *Regan v. Benchmark Co. LLC*, 11-cv-04511, 2012 WL 692056, at *14 (S.D.N.Y. Mar. 1, 2012); and *Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 594 (S.D.N.Y. 2017) – which she claims "have held that where a Plaintiff continues to have employment obligations in New York, the impact requirement is satisfied." *See* Dkt. Entry No. 15, at 2. However, and again, the cases on which Plaintiff relies are inapposite. Indeed, Plaintiff's argument relies on an overly broad reading of *Hoffman* which has been soundly rejected.

First, in *Anderson*, the court denied defendants' motion to dismiss the plaintiff's failure-to-hire claims under the NYCHRL because the plaintiff would have worked in New York City but for defendants' allegedly discriminatory conduct. *Anderson*, 2015 WL 5008771, at *4 ("Her rejection from the position denied her the opportunity to work in New York City, thus providing the necessary New York City workplace nexus for her claim of a NYCHRL-covered injury.").

Second, in *Regan*, the court found that the plaintiff could state a NYCHRL claim based on her transfer from the defendants' New York City to New Jersey offices because (1) "the transfer was the culmination of a number of alleged discriminatory acts that took place at Benchmark's New York City offices while Regan worked there"; (2) "although [the plaintiff] was physically

working out of Jersey City, <u>all other aspects of her employment connected her to Benchmark's</u> <u>New York City office</u>;" and (3) she "continued to service New York City-based clientele and remained under the management and supervision of Benchmark's New York City office." *Regan*, 2012 WL 692056, at *14 (emphasis added).

Finally, in *Chen-Oster*, the court denied defendants' motion to dismiss because it found that the plaintiff had plausibly pleaded that "she '<u>regularly travels to and works from the Goldman</u> <u>Sach's New York, New York office</u>,' serves clients in New York, and that she had at least one meeting to discuss her career advancement at Goldman Sachs while in the New York office." *Id.* (emphasis added) (internal citations omitted).[3] *Chen-Oster*, 251 F. Supp. 3d at 594.

Here, in contrast, the evidence overwhelmingly shows that, from in or around April 2018 until her termination in February 2019, Plaintiff's employment was based in and tied to RLC's Lyndhurst, New Jersey – not New York City – offices. (Tejada Decl. at ¶¶ 8, 18, 27-47.) Indeed, Plaintiff cannot possibly rebut the fact that she regularly worked from RLC's Lyndhurst, New Jersey offices – along with the rest of the Factory Stores team, including her supervisor and her three direct reports. (*Id.* at ¶¶ 8, 18, 20, 28-29.) Plaintiff also cannot refute the fact that her human resources function was not limited to or in any way focused on New York, but was instead national/international in nature. (*Id.* at ¶¶ 35-39.)

---

[3]     Notably, the *Chen-Oster* court cited *Chin* for the proposition that, "[t]o succeed on a motion to dismiss, a defendant must show 'that there is no possibility that there was an impact in New York.'" *Id.* (quoting *Chin*, 2012 WL 4473293, at *3). However, as explained, *supra*, the "no possibility" standard discussed in *Chin* applies to motions to remand for fraudulent joinder – not motions to dismiss for lack of subject-matter jurisdiction. The *Chen-Oster* court did not provide any explanation for its reliance on *Chin* in this context. Further, to the best of counsel's knowledge, *Chen-Oster* is the only decision which has applied *Chin*'s "no possibility" standard to a motion to dismiss. To the contrary, at least one court has explicitly acknowledged that *Chen-Oster*'s application of the "no possibility" standard on a motion to dismiss `was "incorrect." *Amaya*, 340 F. Supp. 3d at 223 (rejecting plaintiff's reliance on *Chen-Oster* and reaffirming the principle that "it is a plaintiff's responsibility to establish subject matter jurisdiction in a motion to dismiss pursuant to Rule 12(b)(1)"). Accordingly, the *Chen-Oster* court appears to have erroneously relied on *Chin* in rendering its decision. The Court should therefore decline to follow *Chen-Oster*.

Accordingly, even though Plaintiff may have traveled to RLC's New York City offices on rare occasion, she is still unable to invoke the protections of the NYSDHR and NYCHRL. *See Amaya*, 340 F. Supp. 3d at 222 ("The location of employment-related meetings does not adequately impact the terms and conditions of employment within New York City, regardless of the number of meetings or whether any employment-related decisions were rendered."); *see also Bloomberg L.P.*, 967 F. Supp. 2d at 865 ("[P]ointing to a few occasions in which a claimant performed some work in New York and evidence that certain adverse actions were executed from New York is insufficient to show that the alleged discriminatory events had an impact in New York."). Indeed, as discussed, *supra,* the Second Circuit has expressly rejected the notion that an employee who lives and regularly works out-of-state can invoke the protections of the NYSHRL and NYCHRL merely because she frequently communicates with other New York City-based employees and has meetings in New York City. *See Fried*, 500 F. App'x at 42.

It is also irrelevant that Plaintiff's human resources function – which impacted thousands of RLC employees across North America – may have also affected RLC employees in New York. *See, e.g.*, *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 182-3 (2d Cir. 2016) ("[Plaintiff] argues that the impact of her termination was felt in NYC because…she spoke with patients in NYC on the phone and those patients were impacted when she no longer worked with them. These meager interactions with NYC residents do not rise to the level of those rejected in *Hoffman*.").

Fundamentally, if Plaintiff's overly broad interpretation of the "impact test" is correct, then effectively <u>any</u> employee, regardless of where they live or work, could assert claims under the NYSHRL and/or NYCHRL so long as their employer is headquartered in New York City or State. This reading of the law has been soundly rejected. *See Amaya*, 340 F. Supp. 3d at 222; *Bloomberg L.P.*, 967 F. Supp. 2d at 865; *Fried*, 500 F. App'x at 42; *see also Duffy v. Drake Beam Morin*, No.

96 CIV. 5606 (MBM), 1998 WL 252063, at *12 (S.D.N.Y. May 19, 1998) ("To hold otherwise would be to expand the [NYCHRL] to cover any employee who is fired pursuant to a decision handed down by an employer from its New York City headquarters, no matter where the employee in question actually works.").

*          *          *          *

In sum, *Hoffman* and its progeny make clear that the "impact test" is "relatively simple" to apply – it merely involves looking at where the allegedly discriminatory act is <u>felt</u> by the plaintiff. *See Hoffman*, 15 N.Y.3d at 291-292; *Hardwick*, 116 A.D.3d at 465-468; *Lambui*, 2015 WL 5821589, at *4; *Anderson*, 2015 WL 5008771, at *2. And here, the evidence conclusively shows that Plaintiff felt the impact of her February 13, 2019 termination in New Jersey, where she lived and worked at all relevant times – and where she was, in fact, terminated. (Tejada Decl. at ¶¶ 8, 18 20, 22-23, 28, 48-50.) Accordingly, Plaintiff's NYSHRL and NYCHRL claims are meritless, and should be dismissed with prejudice.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

WHEREFORE, RLC respectfully request that this Court enter an Order: (1) dismissing Plaintiff's NYSHRL and NYCHRL claims, in their entirety, with prejudice; and (2) awarding any further relief that it deems just and reasonable.

Dated: February 11, 2020       Respectfully submitted,
   New York, New York

              AKERMAN LLP
              666 Fifth Avenue
              20th Floor
              New York, New York 10103
              (212) 880-3800

        By:  */s/ Matthew A. Steinberg*
             Matthew A. Steinberg, Esq.
             Ira S. Sacks, Esq.
             Raymond J. Berti, Esq.