USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: _July 24, 2020_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOANNA PEDROZA,

                              Plaintiff,

            – against –

RALPH LAUREN CORPORATION,

                              Defendant.

**OPINION AND ORDER**

19-cv-08639 (ER)

RAMOS, D.J.:

    Joanna Pedroza ("Pedroza") brought this action against her former employer, Ralph Lauren Corporation ("RLC") asserting discrimination and retaliation claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Family and Medical Leave Act ("FMLA") 29 U.S.C. §§ 2601-2654. Specifically, Pedroza alleges that RLC wrongfully terminated her after she requested reasonable accommodations due to personal mental health issues. RLC now moves to dismiss Pedroza's NYSHRL and NYCHRL claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. For the reasons discussed below, RLC's partial motion to dismiss is GRANTED.

I.    **BACKGROUND**

    A. Factual Background[1]

    Pedroza, a New Jersey resident, started working at RLC in October of 2015 as a senior director of human resources, in RLC's New York City offices. Compl. ¶¶ 10, 16. About eight

---

[1] The following facts are drawn from the Complaint, which the Court accepts as true for purposes of the instant motion, as well as from Plaintiff's Opposition to Defendant's motion to dismiss, Defendant's Memorandums in Support of the Motion to Dismiss, Plaintiff's Sur Reply, and declarations submitted by the parties. *See Koch v.*

months after being hired, she was promoted to work on Ralph Lauren's Polo and Children's lines of business.  *Id.* ¶ 18.  Soon after assuming this role, Pedroza was again promoted and received another salary increase.  *Id.* ¶ 19.  Pedroza received her final promotion in January of 2018 as the Senior Director of People and Development, Polo Factory Stores for North America (United States & Canada).  Pedroza assumed this role in April of 2018.  Decl. of Joanna Pedroza ¶ 2, ECF No. 30.  The position required Pedroza to work out of RLC's Lyndhurst, New Jersey office with an entirely new staff and supervisor, Deirdre Tejada ("Tejada") instead of the New York City office.  Compl. ¶ 21; Decl. of Deirdre Tejada ¶ 18, ECF No. 21.  This new role that Pedroza took on was entirely different from her previous positions with RLC in New York City.  Def.'s Reply Mem. in Supp. of Mot. to Dismiss 9, ECF No. 34.

In her new role, Pedroza was responsible for overseeing human resource functions for the approximately 180 Ralph Lauren Factory Stores in the United States and Canada which included approximately 8,000 employees.  Compl. ¶¶ 21-22.  There are ten Ralph Lauren Factory Stores in New York State, none of which are located in New York City.  Decl. of Deirdre Tejada ¶¶ 10-11, ECF No. 21.  The factory stores in New York bring in ten percent of RLC's Polo Factory Store total sales in the United States and have approximately 650 to 700 employees.  Decl. of Joanna Pedroza ¶ 25, ECF No. 30.  The New Jersey factory stores bring in less than five percent of the total sales and have approximately 400 to 450 employees.  *Id.*  Occasionally, Pedroza's role required her to travel for meetings and training in New York City, New York; Orlando, Florida; and Las Vegas, Nevada.  Decl. of Deirdre Tejada ¶¶ 44-45, ECF No. 21.  Pedroza maintained contacts with partners, managers, and supervisors in the RLC New York office

---

*Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) (evaluating a Rule 12(b)(6) motion); *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)) (evaluating a Rule 12(b)(1) motion).

during her tenure in New Jersey and was involved in recruitment and training initiatives that took place in the City.  Decl. of Joanna Pedroza ¶ 2-3, ECF No. 30.  In the six months leading to her termination, Pedroza traveled to New York City approximately twelve times for meetings and training.  *Id.*

About a year after she began this role, Pedroza wanted to cut back her work hours because she was experiencing mental health issues.  Compl. ¶ 24.  On January 30, 2019, Pedroza met with her mentor Halide Alagöz, EVP Chief Supply Chain and Sustainability Officer, in Alagöz's RLC New York City office and expressed her desire to reduce her workload.  Decl. of Joanna Pedroza ¶ 17, ECF No. 30.  Pedroza then spoke with Mike Dantonio, SVP, Global People Practices, whose office is in New York City, over the phone who directed Pedroza to speak with Tejada.  *Id.*  ¶ 18.  Additionally, Pedroza spoke with Rhian Grespan in Human Resources at her New York City office to ask about a less stressful work role.  *Id.* ¶ 19.  On February 13, 2019, Tejada terminated Pedroza from her employment in the New Jersey office.  Pedroza alleges the termination is discriminatory and retaliatory conduct resulting from her request for leave.  However, according to RLC, Pedroza was let go because a decision had been made to eliminate her position before she requested leave.  *Id.* ¶¶ 23, 25, 30; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 12, ECF No. 29.

B.  Procedural Background

Pedroza filed this action on September 17, 2019.  The Complaint alleges discrimination and retaliation claims under the NYSHRL, NYCHRL, and FMLA.  RLC now moves to dismiss the NYCHRL and NYSHRL claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure arguing that this Court lacks subject matter jurisdiction.  Def.'s Mot. to Dismiss, ECF No. 20.

3

II.    **LEGAL STANDARD**

Motion to Dismiss under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000) (internal citation omitted); *see also Morrison,* 547 F.3d at 170 (citing *Makarova,* 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998)).

III.    **DISCUSSION**

A.  NYCHRL

NYCHRL does not necessarily restrict non-residents from stating a claim, but it rather expands protections to non-residents who work in the city.  *Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 746 (N.Y. 2010).  To state a claim under NYCHRL, a non-resident plaintiff must allege that the discriminatory conduct had an impact in New York City.  *Id.*  The purpose of the impact requirement is to make the NYCHRL "simple for courts to apply and litigants to follow,

4

lead[ing] to predictable results," and not necessarily to engage in a fact intensive analysis of all of the plaintiff's ties to New York City. *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 42 (2d Cir. 2012) (quoting *Hoffman,* 933 N.E.2d at 747). Courts look to where the impact occurs, not the place of its origination, to determine the location of the discriminatory acts, and the impact needs to be felt by the plaintiff in New York City. *See Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016); *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 221 (E.D.N.Y. 2018) (quoting *Int'l Healthcare Sch., v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 362 (S.D.N.Y. 2007)). Courts have repeatedly held that a non-resident plaintiff's occasional meetings in or travel to the City are tangential and do not satisfy the impact requirement. *See Hoffman*, 933 N.E.2d at 748; *see also Fried*, 500 F. App'x at 42. The *Hoffman* court dismissed a non-resident plaintiff's NYCHRL and NYSHRL claims for lack of subject matter jurisdiction because the plaintiff was unable to meet the impact requirement by only showing he attended quarterly meetings in the City, he had managers in the City, and that the decision to terminate him was made in the city. 933 N.E.2d at 745. Further, the Second Circuit has held that frequent communication with personnel in New York City and occasional travel to the City for meetings, do not satisfy the impact requirement. *See Vangas*, 823 F.3d at 183; *Fried*, 500 F. App'x at 42. Because Pedroza cannot demonstrate an impact in New York City, her NYCHRL claim must be dismissed.

Pedroza argues that the impact requirement is met because: (1) the alleged discrimination led to her termination and because of that she would no longer be able to conduct her work duties in New York, (2) she would no longer be in contact with RLC managers in New York City, (3) she would no longer be required to travel to New York City for meetings, and (4) RLC chose New York as its choice-of-law in its severance agreement. Pl.'s Mem. of Law in

Opp'n to Def.'s Mot. to Dismiss 1-2, ECF No. 29.  Pedroza also argues that her meetings and communications with employees and managers in the city provided a sufficiently close "nexus" with New York to satisfy the impact requirement.  *Id.*

Pedroza cites to *Regan v. Benchmark Co.*, No. 11 Civ. 4511 (CM), 2012 WL 692056 at *14 (S.D.N.Y. Mar. 1, 2012) in support of her claim that her regular contact with the RLC personnel in New York City and her occasional travel to the city is enough of a connection that the discrimination had an impact there.  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 9-10, ECF No. 29.  Pedroza also argues that her communication with the New York City office served an important role to the company because of her involvement in recruitment and training initiatives.  Decl. of Joanna Pedroza ¶ 2, ECF No. 30.  However, *Regan* is factually distinguishable from the instant case because the plaintiff there was transferred from New York to New Jersey as a result of multiple discriminatory actions in New York City, and the *Regan* plaintiff still retained all of her New York City functions and duties.  2012 WL 692056 at * 14. In contrast, Pedroza took on a new role when she moved to the New Jersey office that drastically cut down her contacts and duties with New York City.  Decl. of Deirdre Tejada ¶¶ 22-23, ECF No. 21.  *See Amaya*, 340 F. Supp. 3d at 222 (holding that it would too broadly expand the scope of NYCHRL to accept that mere interactions non-resident employees have with New York City fulfill the impact requirement) (citing *Duffy v. Drake Beam Morin, Harcourt Gen., Inc.*, No. 96 Civ. 5606 (MBM), 1998 WL 252063 at *12 (S.D.N.Y. May 19, 1998)).

Pedroza also cites *Chen-Oster v. Goldman, Sachs & Co.* in support of her claim that her occasional travel to New York provided enough of a connection to New York City to prove impact.  251 F. Supp. 3d 579, 594 (S.D.N.Y. 2017); Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 8-10, ECF No. 29.  However, the *Chen-Oster* court used a more lenient legal standard

that placed the burden on the defendant to prove "that there is no possibility that there was an impact in New York" to succeed on a motion to dismiss. 251 F. Supp. 3d at 585-86 (quoting *Chin v. CH2M Hill Companies, LTD*, No. 12 Civ. 4010 (HB), 2012 WL 4473293 at *3-4 (S.D.N.Y. Sept. 28, 2012)). The standard in *Chen-Oster* relies on the case *Chin v. CH2M Hill Companies, LTD*, and in that case the court evaluated the plaintiff's motion to remand for lack of subject matter jurisdiction due to fraudulent joinder. 2012 WL 4473293 at *1. Although the *Chin* court did evaluate NYCHRL claims, it did not do so in the context of a 12(b)(1) motion to dismiss. *Id.* at *3. Therefore, the legal standard used in the *Chen-Oster* and *Chin* courts is not the same standard applied here, as is clarified by the *Amaya* court. 340 F. Supp. 3d at 223 (emphasizing that the plaintiff has the responsibility to establish subject matter jurisdiction in a 12(b)(1) motion to dismiss). Nor would it matter if the Court were to use the same legal standard as *Chen-Oster* because that case is factually distinguishable from Pedroza's case. The plaintiff in *Chen-Oster* supervised a team located in New York City that she coordinated remotely from Dallas, and she regularly traveled to and worked from the Goldman Sach's New York City office and served clients in New York City. 251 F. Supp. 3d at 592-94. Pedroza's staff and her immediate supervisor were all located in New Jersey and she only traveled to New York City twelve times in the last six months of her employment at RLC, and there were no factory stores located in the City for her to oversee. Therefore, to say that Pedroza's occasional travel and her work with other employees in the City prove impact, even though there are no factory stores in the City, would considerably broaden NYCHRL. *See Vangas*, 823 F.3d 174, 183 (holding that

covering employees whose only contacts with New York City are phone conversations with persons in the city would impermissibly broaden NYCHRL).[2]

At all times relevant to the alleged discriminatory conduct, Pedroza's entire team was based in New Jersey.  Decl. of Joanna Pedroza ¶ 2, ECF No. 30.  Pedroza points to *Wexelberg v. Project Brokers LLC*, No. 13 Civ. 7904 (MHD), 2014 WL 2624761 at \*4 (S.D.N.Y. 2014) where the plaintiff started working in a New York City office then worked remotely from his home in New Jersey and was able to assert a NYCHRL claim.  2014 WL 2624761 at \*9; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 15, ECF No. 29.  However, unlike the plaintiff in *Wexelberg*, the alleged discrimination Pedroza faced occurred while she was based out of the New Jersey office, and not the New York City office.  Decl. of Joanna Pedroza ¶ 2, ECF No 30.  Pedroza argues that she attended meetings and training in New York City; however, she does not explain why these trainings are different from those she attended in Florida, Nevada, and Texas.  Decl. of Deirdre Tejada ¶ 45, ECF No. 21.  Further, Pedroza emphasizes that the meetings regarding her health during the last two weeks of her employment were with New York personnel, and some of them took place in New York City; however, these meetings are not enough to demonstrate impact.  Decl. of Joanna Pedroza ¶¶ 24-29, ECF No. 30; *see Amaya*, 340 F. Supp. 3d at 222 (holding that determining impact relies on where the discriminatory act is felt and not where acts leading to discrimination occur that give rise to a NYCHRL claim) (citing *Lambui v. Collins*, No. 14 Civ 6457 (JS), 2015 WL 5821589, at \*5 (E.D.N.Y. Sept. 30, 2015); *see also EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013) (holding that showing a few occasions where an employee performed work in New York is insufficient to

---

[2] Pedroza's comparisons of her situation with the many failure-to-hire cases she cites are also unconvincing.  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 11-12, ECF No. 29.   Pedroza worked at RLC for years and her situation cannot be analogized to a plaintiff who was not hired due to discrimination.

show that the alleged discriminatory events had an impact in New York) (citing *Fried*, 500 F.

App'x at 42).  Even Pedroza's termination occurred in New Jersey.  Decl. of Deirdre Tejada ¶

49, ECF No. 21.

Pedroza argues impact prospectively by claiming that if she were not terminated, she

would have continued to travel to New York City for meetings and keep in contact with RLC

managers in the City.  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. To Dismiss 1-2, ECF No. 29.

However, the plaintiff in *Amaya* similarly tried to argue that if she remained employed, she may

have been asked to work in the defendant's New York City location, and the court rejected this

argument.  340 F. Supp. 3d at 222-23 (holding that the mere potential of being asked to work in

New York City is plainly inadequate).

Pedroza points to *Downey v. Adloox Inc.* for support, but in *Downey* the defendant only

had one office in the United States at the time that the plaintiff worked there, so the only place an

impact could be felt was in New York.  238 F. Supp. 3d 514, 518 (S.D.N.Y. 2017); Pl.'s Mem.

of Law in Opp'n to Def.'s Mot. to Dismiss 13, ECF No. 29.  In addition to her job functions over

the factory stores throughout the United States and Canada, Pedroza was responsible for

supervising a team of employees who were all based exclusively in her New Jersey office.  Decl.

of Deirdre Tejada ¶ 28, ECF No. 21.  Therefore, since Pedroza has failed to meet her burden of

demonstrating an impact from the discriminatory conduct in New York City, her NYCHRL

claim must be dismissed.

### B.  NYSHRL

For substantially the same reasons, RLC's motion to dismiss Pedroza's NYSHRL claim

is granted.  The intent of NYSHRL is to protect those who live or work within New York State,

and courts have found that the impact requirement, as applied under NYCHRL, should also be

used to evaluate a non-resident plaintiff's NYSHRL claim.  *See Bloomberg L.P.*, 967 F. Supp. 2d at 865; *see also Hoffman*, 933 N.E.2d at 747 (same).  Although the Ralph Lauren Factory Stores in New York provide Pedroza with ties to the state, for the reasons stated below, this is not enough to satisfy the impact requirement.

Pedroza states that her job was national and international in scope, and that she performed the same functions with respect to all the employees she oversaw.  Decl. of Joanna Pedroza, ¶¶ 4, 24, ECF No. 30.  Pedroza argues that her duties to New York factory stores were distinct from the other factory stores because of the size and amount of revenue that the New York factory stores bring in.  *Id.* ¶ 25.  However, the fact that the New York stores represented a larger percentage of sales than other factory stores, does not prove that Pedroza felt the impact of the discriminatory conduct in the state.  To allow Pedroza to assert a NYSHRL claim because she frequently communicated and served the New York factory stores, would too broadly expand the scope of the impact requirement.  *See Bloomberg L.P.*, 967 F. Supp. 2d at 865 (holding that the impact requirement is not satisfied by pointing to frequent communication with offices in New York).

RLC alleges, and the Court agrees, that if Pedroza were able to bring a NYSHRL claim, even though her duties to the New York factory stores are the same as her duties to the other factory stores across North America, then Pedroza would be able to assert similar claims in every jurisdiction that has a comparable statute and a RLC Factory Store.  Def.'s Reply Mem. in Supp. of Mot. to Dismiss 9, ECF No. 34.  This type of claim shopping is not the purpose of the NYSHRL.

Pedroza also relies on the fact that RLC chose to rely on New York law in its severance agreement to distinguish her situation from *Hoffman*.  Pl.'s Sur Reply 2, ECF No. 37; Pre-Mot.

Conference 3:24-25, 8:2-10, ECF No. 16.  However, Pedroza provides no case law to suggest

that these facts are sufficient to establish an impact in New York during her tenure with RLC, or

in connection with her termination.  Pedroza has not established that she felt an impact within the

boundaries of New York State or New York City.

IV.     **CONCLUSION**

For the reasons stated above, Defendant's partial motion to dismiss is GRANTED.  The

Clerk of the Court is respectfully directed to terminate the motion, Doc. 20.


It is SO ORDERED.

Dated: July 24, 2020
New York, New York

_____

Edgardo Ramos, U.S.D.J.

11